And we'll first hear from Mr. Laughlin. And before you begin, I'll note, this is for both sides, Mr. Laughlin last week filed the motion to supplement the record asking us to take judicial notice of subsequent developments in the state court. As best I can tell, the indictment in the underlying case has now been quashed. So as part of both sides' arguments, we haven't ruled on that yet, obviously. As part of both sides' arguments, address whether we should grant that motion to take judicial notice and supplement the record, and if so, how that affects the case. So you can go ahead. Thank you, Your Honor. May it please the court. We're here on a summary judgment entered by the district court that dismissed Mr. Holmes' claims. We're asking the court to vacate that judgment and remand the case for trial because the court ignored pretty fundamental principles of a motion for summary judgment. It resolved disputed facts in favor of the movements and against Mr. Holmes. It viewed evidence in the light most favorable to granting summary judgment and not in favor of Mr. Holmes. It drew inferences against Mr. Holmes and was in his favor. The principal basis of the court's ruling and what I'd like to talk about today is the heck bar. Mr. Holmes was charged with resisting an officer, and the basis of that was that he did not produce a documentary ID when the deputy demanded that, which resulted in this altercation, Mr. Holmes being thrown to the ground and arrested and charged. The charge was pending for just about exactly one year. The district attorney dismissed it. That part, and I'll get to what's happened in state court, but that part, by these parties at least so far, is completely undisputed that it was dismissed by the prosecutor in state court and Mr. Holmes did not go to trial. What is disputed is why it was dismissed. There was a minute entry in state court saying, charge dismissed, completed informal diversion, I believe. I have a quote, but that's what it was. The district court in this case said, well, if this was just a non-prosecution, which is an unconditional dismissal not implying guilt, and we agree with that principle, that would be fine, but here Mr. Holmes agreed to diversion and therefore he's convicted because diversion is tantamount to a conviction. The heck bar applies. It applies to his false arrest claim, and because he made the same types of allegations in his pleadings, it applies even to the excessive force claim, which we argued, well, even if it did apply, it doesn't apply to that because it's temperately distinct. It's a different event in time and what have you, but it all comes down to this minute entry in state court where the prosecutor said there was diversion. All the evidence in the case is there was no diversion. What they called diversion was the prosecutor's attempt to get Holmes to say, I'm not going to file a lawsuit, and if you don't file a lawsuit, I'm not going to file a lawsuit, and that's what Holmes did. He refused to do that. The district court ignored that. The district court in this case said, well, the minute entry is presumptively correct as an extract from the court record, and you're bound by that, and your affidavit, your declaration to the contrary is no good because it's self-serving. Well, in terms of the minute entry being presumptively correct, there are two parts to that, and the state court judge in the documents we've submitted recently drew this distinction. I guess it's correct that the prosecutor came to court and said, completed informal diversion. Presumably that's correct. Just like I'm in open court today saying that never happened, so it's correct insofar as the record is presumably correct in recording what the prosecutor said to the extent that it's true that Mr. Holmes completed informal diversion and therefore presumably that he agreed to it to begin with as a condition to having the charge dismissed. That's disputed. That's generally disputed. If that's what's presumed to be true in the record of the minute entry, that's disputed, and that can be disputed by Mr. Holmes' own declaration. This court has held that. This court held that in a case on November 10th, Guzman v. Allstate over a life insurance policy where the court said, well, this lady's life insurance policy, I believe the issue was whether the man lied in his application saying he wasn't a smoker. The wife and someone else issued an affidavit saying, well, he never was a smoker. In fact, I never smelled smoke on him. The allegation was, well, that's just self-serving. Well, it is self-serving, but it defeats summary judgment. Go argue to the jury it's self-serving, and maybe they'll agree with you. Any parties have to. What's the status in state court now? In state court now, since everything has been filed, the court has quashed the charge, the Which means what? So the charge was dismissed? There's no, the case is completely off the record, basically. The case is completely off of the state district court's record. I'm told that the prosecutor will appeal that, but we say that that's resolved in Mr. Holmes' favor, the motion to quash. How we got to the motion to quash is contemporaneous with taking this appeal, we went to the state district court and said, well, this motion entry has now been used against us, raising this heck bar. It needs to be corrected. The state district court said, well, I'm not going to correct it. It's what the prosecutor said, and that's all it is. And it turns out I wasn't even on the bench anyway. This wasn't open court. Is open court when the courtroom's open and you go speak to the four walls? It's not. The judge has to be on the bench, is what he said. So this charge was never formally dismissed in open court, but it's too late to bring it. So it sounds to me like you need a motion to quash, which we follow up, which gets us to the motion to quash hearing in November and the transcript that we got, I think, the Saturday after Thanksgiving. So that's why we're submitting those things now, that the charge has been quashed, which we say is a bona fide, favorable termination in favor of Mr. Holmes. If that gets appealed and the appeal is denied, fine, it's still quashed. If the appeal is granted and the court of appeals says, well, no, you really did dismiss it properly in September, then we're just back to where we are now anyway, where we thought we were. That's status quo. The prosecutor dismissed it back in September of 2019, supposedly in open court. Nobody disputes that in this case. Nobody had disputed that in this case. It's whether Mr. Holmes gave anything for that, which is manifestly disputed. So whatever happens in state court with an appeal doesn't affect what should the United States Supreme Court. I'm surprised you say that, because if we take account of all this, it seems like you have a much stronger argument. The state court record then supports. Oh, absolutely. Absolutely. But we think we win regardless. So yeah, if the state court's quashing of the charge stands up, that's very much in Mr. Holmes' favor. If for some reason the court of appeals says, well, it was okay to dismiss it in open court, even though the court of appeals entry says he was there, well, then we're still back to it was dismissed. And we say that's a bona fide termination in Mr. Holmes' favor for purposes of heck and for other purposes. We're still back to the question of, did he give anything? Did he agree to diversion? Did he in particular agree not to file a lawsuit? And it's even generous to say that that's disputed, because there's absolutely no evidence of that. And all the evidence is he never agreed. The other case is Thompson v. Clark pending in front of the United States Supreme Court, where the court has been asked to decide what is a heck dismissal. Does it have to affirmatively indicate innocence, or does it merely need to be consistent with innocence? Well, the district court here in this case mentioned that it needs to be consistent with innocence. I think that's Fifth Circuit law that the court will get to in a moment. The balance of the cases show that you don't have to affirmatively show that you're acquitted at trial or that you're innocent in some way. It just needs to be a dismissal in your favor. Mr. Holmes is not going to face these charges ever again, either because they were dismissed or it's been quashed. That's a favorable determination for any defendant. So in this case, the Supreme Court decision, however it comes out, I don't think it's going to make a difference, because the court may well rule there is no malicious prosecution claim under federal law, which this court has already done in Castellano, saying there's no such thing as malicious prosecution as such under 1983. There's a Fourth Amendment claim that's connected to malicious prosecution. So we'd just be back where we are anyway. If you have to affirmatively indicate that you're innocent in some fashion, the non-prosecution in this case does that. That's what Louisiana law is in the Lamoine, Louisiana Supreme Court case that says a non-prosecution by the prosecutor implies a bona fide termination. It shows that this defendant is innocent. There are exceptions to that, and one of the exceptions is a plea bargain. So if he agreed to diversion, that would be an exception, but then we're back to fighting over whether there was diversion as a matter of fact. The cases, to the contrary, that the district court cited were the Fifth Amendment case, where there was an undisputedly diversion. Morris v. MacDessy, where there was undisputed diversion, and this court observed there that diversion was not consistent with innocence, because that is the standard, the resolution consistent with innocence, and it is. And Evans v. Bell, which didn't survive Castellano, that was back when this court's authority was if you can make out a common law claim for malicious prosecution, you've also made out a federal law claim, that's been rejected. But in Evans, which applied Texas common law and not Louisiana law, the man did give something, and this court emphasized that in that case. He said it was disputed, it was a Bivens claim, and the claim was, well, he agreed not to seek employment with the Forest Service again or to resign. And he said, no, I didn't, that's disputed. All I did was said if they bring the charges again, I'm not going to raise a speedy trial defense. This court said, well, you gave something. You agreed to something. Whether this is disputed or not, you agreed to something in exchange for the dismissal. We don't have that in this case. There's no agreement of anything. In terms of excessive force, again, that died based on what the district court did with Heck, because the court said, well, your pleadings in this case say that you never did anything. You didn't resist, so you're maintaining your innocence in the pleadings, and we're going to, based on this case of Daig versus Waveland and others, we're not going to even get into whether the force against you is temporally distinct or conceptually distinct, because the allegation is that Mr. Holmes refused to show ID, and then after he did that, the officer threw him to the ground, kneed into his back, handcuffed him and did the same thing. Mr. Holmes says all that, and we say that even if Heck could possibly apply, those are different events from the resistance in this case, which is not showing an ID because the officer wanted to find out who he was. He was investigating Holmes and not investigating a crime. There's no evidence in this case that Mr. Holmes gave anything, gave up anything, agreed to do something, agreed not to do anything. There's evidence that he said, I will file a lawsuit because I want to hold them accountable. I want my day in court, in federal court. I want my day in court, in state court. So just to pretend, as the prosecutor did, that this is diversion, it's false, and it's been shown to be false. The district court bent over backwards to find that there was diversion. The court observed, well, he could have, you know, he has his evidence back and forth with his lawyers, but is that really authentic? Well, yeah, it's authentic because it's authenticated by Holmes' declaration, and it doesn't need to be authenticated on a motion for summary judgment since the last rule change. It just needs to be able to be capable of presenting in an authentic form at trial. So both of those things are covered, and the judge also said, well, you know, he could have, yeah, he said he wasn't going to agree to diversion, but, you know, he could have changed his mind in the intervening year. Yes, he could have. You can draw that inference against Holmes as a human being, but on the judge evaluating a motion for summary judgment, you can't do that. The inference is he never changed his mind, and there's no evidence that he ever changed his mind. So the case is all about heck. It's all about whether a heck bar applies because it's all about whether there's diversion or something tantamount to a conviction. That central issue is disputed, and there is no piece of paper in this case that suggests, a court record, that suggests Mr. Holmes agreed to diversion of some type is this minute entry, which is only a record of what the lawyer said in court. That's what the district court said recently in state court. I'm not going to correct the minute entry. This is what the prosecutor said. It's not dispositive of anything. So if the heck defense is based on an agreement by Mr. Holmes that he said he would never file suit or some more formal diversion, where's the evidence of it? Where's the document with his name on it? Where's the transcript where he comes in open court? Where's anything generated by his lawyer saying, yes, we agree to these terms? All of the evidence is, I absolutely reject this. The only thing is this minute entry, which if that's it, there's nothing. So we think the appellee should say today, show me how he agreed to diversion. What is your evidence? Because if it's just the minute entry, it's no evidence at all. Show me something else. Show me a contract. Show me a guilty plea. Show me an email. Show me a text message. Show me something where Mr. Holmes or even his lawyer agreed. They can't do that. They should try. Thank you, Your Honor. All right. I'll go from the other side. And you've got, you've saved five minutes for rebuttal, Mr. Laughlin. Morning, Your Honor. May it please the court. Jim Mullally in behalf of the defendants. To first address your question regarding what this means in this state court proceeding, I don't know. I think, I think the. Seems like a pretty big problem if we consider it. It changes the entire terrain of the case, unless you can correct me if you don't see it that way. I don't know that I see it that way. I think if that judgment quashing the indictment stands through the appellate process, and there was an appeal filed on December 1st, that is going through the appellate process. And then indeed, as a result, the heck conditions are met, arguably. Then I think the relief per Johnson v. McElveen would be to file a new suit in the district court. The judgment dismissing this case, citing the language in McElveen, says that the Holmes federal law claims barred by heck, as identified above, are dismissed with prejudice to their being asserted again, not being asserted again until the heck conditions are met. So I think that, according to the Fifth Circuit President, would be plaintiff's next clause. My understanding is that's the remedy if a charge is pending. If a charge is pending in state court and someone's already brought the federal suit, we say, well, no, this heck issue has to get resolved, so you have to file the federal suit later, like you just said. But here, as I understand it, again, correct me, the current status is the prosecution is dismissed. You may reinstate it. I'm not sure that we've ever addressed that. It's not the trial set for six months from now, we're in the middle of this. Right now, there is no complaint pending. Right. Under Wallace, if the case was still pending, you might consider a stay until the heck conditions are met. But this went through the pipeline on a summary judgment district court granted, based largely, almost entirely, on heck. So the heck conditions, as they stand now, are met, right? You say met. From whose standpoint? From his standpoint. From plaintiff's standpoint, as it stands right now on the state court record, I think it's fair to say. Why shouldn't we just remand? The district court can stay it pending the appeal.  I couldn't find a case where this has happened on appeal where you supplement the record on appeal to say the heck conditions are met. But I think it's clearly going to go through the appellate process in the state court. I think from what I've seen, and it's an issue of state law, we don't have to talk about it here, but I think there's a valid basis for the appeal. So I guess we could stay our case, but it's a matter of who wants it on their pending list, us or the district court. We wouldn't think that way. You'd never think that way. There's another option, however. It was briefed in the lower court, and the defendants moved for summary judgment alternatively, alleging the probable cause existed for the plaintiff's arrest and that the defendants were entitled to qualified immunity because a reasonable person in Sergeant Reddick's shoes would not know that his conduct that day violated clearly established law. Also, the court could certainly grant relief or affirm the district court based on the alternative argument that reasonable suspicion existed based on the facts and information available to the officers on the scene and that subsequent to the investigatory stop, when they determined that he had two active fugitive warrants, certainly probable cause existed for his arrest on the fugitive warrants as well as the resisting arrest charge. Louisiana revised Statute 14108 does make it illegal for someone to refuse to provide identification during the course of an investigatory detention. There's no real issue of fact that he emits in his pleadings that he didn't provide his identification. But I thought under the Louisiana law it had to be a valid arrest or detention. It has to be a valid detention. Right. And so, I mean, isn't that disputed? But I understand there might not be a dispute about the resistance part. Well, I think – and I'll get to that in a second. Well, I think it's certainly – no one's disputing that Mr. Holmes was at the fair on the Dane Question alone taking photographs of children, that children expressed their concerns and fear to the principal who relayed those concerns to Sergeant Reddick. Those are all undisputed facts. I can't imagine a world in which Sergeant Reddick would be unreasonable in following up the principal's concern about Mr. Holmes' behavior, which brought him to detain the plaintiff and subsequently found out that he had fugitive warrants. So, I mean, I think all of the actions taken by Sergeant Reddick were reasonable under the circumstances and under the law. Back to the original question about – the record on appeal establishes that at the time that the district court had the case, there was a heck bar, right? And so the record that the district court had in accordance with the precedent of this circuit – Evans, Taylor, Morris – the plaintiff had, on the state court records, participated in an informal diversionary program which was a condition – which resulted in a conditional dismissal of the criminal charges against him, which, under the precedent in the Fifth Circuit, results in a heck bar. The other grounds that we move for summary judgment on in the district court was that the plaintiff's excessive force claim – the plaintiff just failed to meet his burden. At no time, despite the district court giving him ample opportunity to ever provide any evidence that he was injured, there's not a scintilla of evidence in the record that he sustained a non-de minimis injury, which is required under his burden of proof. And, again, I think the district court – I mean, I think this court can review the record, determine that a plaintiff's Fourth Amendment claims – Fourteenth Amendment claims of unlawful detention, unlawful arrest can be affirmed because probable cause existed for his arrest, and the court would therefore not need to remand the case. How long will the state appeal take? I mean, it could take a while. It could take a while. As I came here today, the judge actually had yet to even sign the appeal, so it hasn't even gone up. It hasn't even lodged yet. So I would imagine that if they didn't get relief from Louisiana Fourth Circuit Court of Appeal, they'd take it to the Supreme Court. Their grounds seem to be sound. The district court, in granting a quashal, quashed a non-existent bill of information. So I submit to the court – not that it's academic for purposes here, but I don't think that was a lawful order, to be honest with you. If the court has any other questions. There is – I mean, I think we would have seen it in the district court record. There is no other evidence of the diversion other than that minute entry. That's correct. Was there any testimony from the prosecutor? No. And that wasn't brought out even in these recent state court hearings? So there was no testimony by the prosecutor. There was an email from the prosecutor that said that was his – I think I have seen that. Right. There was an email from the prosecutor saying that was the deal, and he understood the deal as the prosecutor understood it. In the state court hearing, the recent ones I'm talking about that resulted in the quashing, there was no – people weren't coming in testifying about what happened with this case? There is a transcript of it. I think it's before the court, those proceedings. We weren't a part of them. I didn't have standing to be a part of that proceeding. But it wasn't – there was a hearing in open court. As I understand it, it's before the court. All right. Thank you, counsel. All right. Rebuttal. Thank you, Your Honor. My colleague raised, I think, even more factual issues. No one disputes that Holmes was photographing children. That's not true. It is disputed. His phone was examined afterwards, was searched. He wasn't photographing children. He was taking photographs at the – It's not disputed that the principal told the police that was the concern. We don't – What matters is what the police had a reasonable basis to believe. Right. And the police, in this case, Deputy Reddick, supposedly was told that some man was photographing children and the children were uncomfortable because of that. Mr. Reddick also conceded that that's not a crime. Photography is not a crime. If you'd like to see pictures of children at this church fair, you can go on the church school's website and see all the pictures of children at the fair you want. There's photographers out there. There are photographers who specialize in children. They're child photographers. They come to my kids' school every year. They came to my school when I was in school and my parents as well. But anyway, he wasn't doing that. He was doing something that was completely lawful. Mr. Reddick conceded it was completely lawful. Deputy Reddick said, well, yeah, he has a right to photograph children. Even the statute, the video voyeurism statute, it's only if there's some kind of lewd and lascivious purpose for doing it. It's a specific intent crime. An analogous statute, I think in Indiana, was when the last year struck down the First Amendment grounds. If Mr. Holmes was ever even charged with that, we'd have moved to quash it on First Amendment grounds. And it doesn't apply anyway, according to Mr. Reddick. He said, well, I didn't know who this guy was. I was investigating him because he could have been a registered sex offender. Well, yeah, he could have been. Is it probable that someone at the fair, even someone taking photographs, is a registered sex offender? No, it's not probable. And it's not necessarily reasonable to conclude that simply by virtue that someone's taking photographs. But even then, the reasonable suspicion supposedly is, this guy's taking photographs, I want to find out who he is because maybe he shouldn't be here to begin with. And you're right, Your Honor. Louisiana law requires reasonable suspicion for the stop before asking for ID. Asking for ID cannot be the basis of it. This court ruled that in Brown v. Texas, I think, 40 years ago. So there needs to be reasonable suspicion for that to begin with. Even then, Mr. Holmes, his resistance is supposedly saying, why, why do you want to talk to me? Mr. Reddick testifies, well, then I put him in an armbar for his safety and mine. I put him in a rollover armbar, take down and took him down to the ground, handcuffed him and did all this other stuff to him. And I was doing that following sheriff's office procedures. If I wasn't following the procedures so assiduously, what I would have done is started beating him in the face. This is to get his ID because he's resisting showing ID. He would have started beating him in the face. He took him down to the ground and kneeled in his back and pulled his shoulder up. It caused much more than a de minimis injury unless you do what the district court did and say that Holmes' declaration is completely worthless. We briefed that pretty extensively, I think, the level of injury in the briefs. I'm not going to rehash that now. There was an active fugitive warrant. There was some traffic court attachments for Mr. Holmes, and he was taken in for that basis after all this other stuff transpired. I think those, I'm really guessing now, but I think those were resolved in his favor. But regardless, it was some traffic tickets and traffic-related attachments that they later found out he had. And as this court knows, what the officers later found out doesn't mean anything. It's what they knew at the time. What Officer Reddick knew at the time was supposedly this guy is taking photographs and some children don't like it. He says Mr. Holmes has committed no crime whatsoever, but I just want to find out who he is. He could have asked him who he was. Holmes could have told him who he was. They could have had a consensual encounter for 30 seconds or an hour and a half if they want by consent. But when it comes time for Mr. Reddick to forcibly seize Mr. Holmes, throw him to the ground, kneel in his face, restrain himself from starting beating him in the face like he testified he wanted to do, that's an arrest. This man is not free to walk away. He's face down on the ground with his shoulder dislocated and handcuffed. He's arrested then. So that's the arrest we're talking about that required probable cause. The stop before that is the stop that required reasonable suspicion. And the reasonable suspicion had to be some type of a crime. By Reddick's own admission, there wasn't a crime. There was somebody taking photographs. Photography is not a crime. And the video voyeurism claim that the appellees raised, that's another after-the-fact thing. Let's go see what crime this might have been. Instead of saying what we knew and what the officer knew at the time, the crime was he committed no crime, but maybe perhaps he's a sex offender and shouldn't be here, so I need to go demand his ID. That's what we're talking about. Everything else is disputed, and that's why summary judgment was very much improper. In terms of the remedy with what's happening in state court, if we were starting the case anew in the district court, it would be state. We'll see what's going to happen. At this point, the reasons why we would have stayed it have been resolved, although perhaps a state pending appeal would be appropriate, although we think we win under any scenario. All right. We have the argument from both sides. The case is submitted, and the court is in recess until tomorrow morning. Your Honor.